United States Courts
Southern District of Texas
FILED

AUG 05 2016

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FERNANDA BRADY** d/b/a **INKLINGS PUBLISHING,** and Rosa Maria Garza, Plaintiffs, | § § § § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| Carl M. Titterington Daniel Simpson J.J. Titterington, Defendants, | § § § § § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, FERNANDA BRADY d/b/a INKLINGS PUBLISHING ("Inklings"), and Rosa Maria Garza ("Garza") (collectively referred to as "Plaintiffs"), and file this *Plaintiffs' Original Complaint,* complaining of Carl M. Titterington ("Carl"), Daniel Simpson("Simpson"), and J.J. Titterington ("J.J.") (collectively referred to as "Defendants"), and for cause of action, Plaintiffs would respectfully show this Honorable Court the following:

### PARTIES

1. Plaintiff Fernanda Brady is an individual residing in Harris County, Texas, and doing business as Inklings Publishing. Inklings is a publishing company in Houston, Texas, that contracts with aspiring authors to publish books that would otherwise remain unpublished because the authors are not known.

2. Plaintiff Rosa Maria Garza is an individual residing in Harris County, Texas, and the illustrator of the comic book concept that Defendants agreed to do for Inklings.

3. Defendant Carl M. Titterington is an individual desirous to engage in the publication of a comic book under contract with Inklings, residing in and domiciled in Winfield, State of Kansas. He can be served with Citation at 901 E. 11th Avenue, Winfield, Kansas 67156 under §17.044 of the Texas Civil Practice & Remedies Code.

4. Defendant Daniel Simpson is an individual desirous to engage in the publication of a comic book under contract with Inklings, residing in and domiciled in Winfield, State of Kansas. He can be served with Citation at 901 E. 11th Avenue, Winfield, Kansas 67156 under §17.044 of the Texas Civil Practice & Remedies Code.

5. Defendant J.J. Titterington is an individual desirous to engage in the publication of a comic book under contract with Inklings, residing in and domiciled in Winfield, State of Kansas. She can be served with Citation at 901 E. 11th Avenue, Winfield, Kansas 67156 under §17.044 of the Texas Civil Practice & Remedies Code.

**JURISDICTION**

6. Jurisdiction is proper in this Court because this action arises under 17 USC § 106A(a)(1)(A)(B) and (3)(A) to stop the infringement by Defendants of a copyright that belongs to Inklings and Garza, as provided by 28 U.S.C. §1338.

7. In the alternative, jurisdiction would be proper in this Court under 28 U.S.C. §1332, the federal diversity jurisdiction statute, in that the Defendants are all

residents of the State of Kansas and have made themselves amenable to the jurisdiction of Texas courts by having extensive contacts during the transaction at issue and by retaining the services of an attorney in Texas. The amount, which is difficult to determine because of the newness of the copyright, could easily exceed $75,000.

## VENUE

8. Venue is proper in this judicial district under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, the contract by and between Plaintiffs and Defendants for the copyright was entered into in this district and the comic book in question was going to be put into the stream of commerce in this district. The substantial contacts of Defendants with this district arise all from the copyrights that are the subject matter of this action. Further, the Defendants retained the services of a Houston attorney to send correspondence on their behalf.

## FACTS

9. In 2015, Inklings entered into a contract with Defendants to publish a series of comic books based on a concept that Defendants had but were unable to accomplish because none of them was an illustrator. The contract provided that Inklings would publish the comic books and would be the owner of the copyrights thereof for 10 years.

10. Inklings retained Rosa Maria Garza, the other Plaintiff, as an illustrator so that the Defendants could accomplish the publication of the first comic book in the series. Garza would make the drawings for all the pages of the comic books and also the cover and back page thereof.

11. To facilitate Defendants work, Inklings created a shared drive so that the Defendants could upload the finalized panels with the authors' text and coordinate the creation of the comic book.

12. The work progressed during late 2015 and early 2016, and Inklings secured for Plaintiffs and Defendants an opportunity to put the comic book into the stream of commerce during a comic book convention in Houston on June 16, 2016, called Comicpalooza. The release date required that the comic book's production file be ready no later than May 16, 2016 in order for proofing and inventory orders to arrive in a timely fashion without added expedited shipping expenses.

13. Defendant "J.J." was supposed to be the editor of the comic book, which entails checking that no typos are present and the grammar is appropriate and there are no other problems. Once edited, the comic book was to be compiled, formatted, and published by Inklings.

14. On or about May 10, 2016, Garza, the illustrator, submitted her cover design to the Defendants. Inklings shared the drawings with the Defendants, who had previously had a collaboration meeting with Garza and had agreed on the design, and on May 10, 2016, after viewing the delivered work, Defendants expressed satisfaction with it and did not mention any concerns.

15. On or about May 13, 2016, the finished panels were uploaded to the shared drive by Defendants. At that time, Inklings' began formatting the cover using the finalized cover design provided by Garza and approved by Defendants.

16. Although the Defendants had already approved the cover design, when the fully formatted cover was shared with Defendants, they expressed dissatisfaction with the style of the design and wanted to make changes.

17. When Inklings reviewed the rest of the work presented as finalized panels by Defendants, Inklings discovered that no proper editing had been made. The text which Defendants were to add was riddled with grammatical and typographic errors, and the comic book in that condition could not be sent to print.

18. Because the panels needed to be fixed and the Defendants had expressed some issues with the cover, Inklings was upset but agreed to give Defendants one more week, until Friday, May 20, 2016 to submit the comic book correctly edited. This meant the proof would need to be ordered with expedited shipping, which would increase Inklings' costs for the project.

19. On Monday, May 16, 2016, Defendants Carl and Simpson contacted Garza, the illustrator, and stated to her that they wanted to retain her services because they were planning to self-publish the work directly instead of honoring the contract with Inklings. The illustrator stated to them that she, Garza, worked for Inklings and would not act without Inklings approval and encouraged them to discuss the matter with Inklings.

20. On the evening of Monday, May 16, 2016, Inklings held a telephone conference with Defendants and expressed to them the urgency of completing the project. At no time during the long telephone conference, did the Defendants discuss or mention their desire to self-publish the work.

21. On Saturday, May 21, 2016, as Defendants were uploading the corrected files and new cover, Inklings noting that the title was askew, requested Defendants to make the title straight. This request lead to a long conversation with the Defendants expressing impatience for the request to straighten the title. The conversation ended at 3:06 PM, Central time.

22. On Sunday, May 22, 2016, Plaintiff entered the shared drive that contained all the comic book material to begin compiling the book, just to discover that at 3:15 PM, Central time, on Saturday, May 21, 2016, that is, 9 minutes after Inklings conversation with the Defendants ended, Defendant Carl had entered the drive and removed all the files, making it impossible for Inklings to complete the project. All attempts to discuss this action with the Defendants went unanswered.

23. Although very upset for the unbecoming conduct of the Defendants, Inklings nevertheless sent an email on Monday, May 23, 2016 to them, advising Defendants that despite their having committed theft of property belonging to Inklings and Garza, for the sake of an amicable end of the relationship, Plaintiffs were willing to consider Defendant Carl's actions as an expression of Defendants' desire to terminate the contract and apply the terms agreed to in the contract to compensate both Plaintiffs for all the time and labor spent on the comic book project. Plaintiffs received no response of any kind from Defendants.

24. On or about June 30, 2016, Inklings received a letter from an attorney who stated that she represented the Defendants in the comic book affair and holding that Inklings did not have a right to terminate the contract because the contract itself stated that only the authors could terminate it. Attached marked as Exhibit "A" is a copy of the letter.

25. The letter forced the Plaintiffs to retain the services of the attorney whose name is subscribed to this pleading, who responded to the letter dated June 30, 2016. Inklings response stated that, as the Inklings email made it clear, Inklings was not terminating the contract but seeking an amicable solution to conclude the affair arising from the adverse actions of Defendant Carl, and that Inklings reserved its

rights to claim repudiation by the Defendants who had made performance impossible for Inklings, and sue for breach. Attached marked as Exhibit "B" is a copy of the letter.

26. A subsequent letter by the same attorney retained by Defendants, claimed that her clients (the Defendants) had "materially changed their position in reliance" of Inklings repudiation by not participating at Comicpalooza on June 16. The argument has no merit because the Defendants could not have participated at Comicpalooza nor in any other event because the material they allegedly would have presented did not belong to them. Attached marked as Exhibit "C" is a copy of the letter.

27. The letter of the attorney retained by Defendants further stated: "The digital files that <u>Carl Titterington removed</u> from the shared drive constitute the work product of the <u>Authors' friend who edited the panels</u> after Rosa Maria Garza failed to meet her obligations." (underlining supplied).

28  The foregoing statement is an admission by Defendants that they have violated the provisions of Title 17 U.S.C. § 106A(a)(1)(A) and (B), (a)(3)(A), and (b). See Exhibit "C" above.

## CAUSES OF ACTION:

### INFRINGEMENT

29. By their own admission, the Defendants infringed the copyrights of the Plaintiffs by allowing their "friend" to edit the panels created by and belonging to Rosa Maria Garza and ordered by Inklings.

30. By their own admission, the Defendants infringed the copyrights of the Plaintiffs by planning to participate in Comicpalooza with material copyrighted and owned by the Plaintiffs.

## UNFAIR COMPETITION

## FRAUD

31. Falsehoods and misrepresentations may be communicated by actions as well as by the spoken words; therefore, deceptive conduct is equivalent to a verbal representation. Negotiating, obviously in bad faith, with Inklings with respect to how the work was to be finished for Comicpalooza, and forcing both Plaintiffs to spend even more of their time and energy in preparing for the convention, just to 9 minutes later go into the shared drive to destroy the material that would have been used for such purpose, constitutes fraud.

## CONSPIRACY TO COMMIT FRAUD

32. The Defendants are liable for conspiracy to commit fraud by approaching Rosa Maria Garza in an attempt to persuade her to join in their conspiracy to defraud Inklings of its contractual property and self-publish material that did not belong to the Defendants, which constitutes a fraud. Although Garza refused to join them, the Defendants' action evidences the existence of a conspiracy.

## BREACH OF CONTRACT

33. By their unlawful destruction of the property of the Plaintiffs, the Defendants committed a material breach of the contract.

## INTENTIONALLY

34. Each of the acts described above, together and singularly, was done intentionally and constitutes the producing causes of the damages sustained by the Plaintiffs.

## DAMAGES

35. For the infringement of their copyrights, Plaintiffs are entitled to their actual damages and any additional profits of the infringers; or the statutory damages the Court may find appropriate, as well as costs and attorney's fees.

36. For fraud, Plaintiff is entitled to recover actual damages and exemplary damages for the willful destruction of the Plaintiffs' material, along with attorney's fees, interest and court costs.

37. For breach of contract, Plaintiffs are entitled to regain the benefit of the bargain, together with attorney's fees.

38. For the prosecution of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or to the Supreme Court of Texas.

## JURY DEMAND

39. Plaintiffs have requested that all causes of action alleged herein be tried before a jury. Plaintiff previously tendered the appropriate jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, the Defendants be ordered to cease and desist from their infringement of the Plaintiffs' copyrights. Further, that said Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages or statutory damages, and all punitive and exemplary damages as may be found. In addition, Plaintiffs request the award of attorney's fees for

9

the trial and any appeal of this case, for all court costs on their behalf expended, for prejudgment and post judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

/s/ Ramon M. del Villar
Ramon M. del Villar
State Bar No. 00785814
Federal Bar No. 11332
ramondelvillar@msn.com
P.O. Box 61097
Houston, Texas 77208
(281) 840-7107 (Office)
(832) 230-8476 (Facsimile)

**ATTORNEY FOR PLAINTIFF**



# GREGG VALBY

SCOTT R. VALBY, PC *+
KAREN H. MILLER
THOMAS G. OVERBECK
JING XIONG (BRAD) LUO#

JODI D. SEALY
MICHAEL A. HOHOS
JENNIFER N. CHANG
NICHOLAS A. BAILEY
TRAVIS G. BEERWINKLE

GREGORY L. GREGG, RETIRED

*BOARD CERTIFIED IN
RESIDENTIAL REAL
ESTATE LAW BY THE
TEXAS BOARD OF LEGAL
SPECIALIZATION
+MEMBER, COLLEGE OF
THE STATE BAR OF TEXAS
#LICENSED IN NEW YORK

June 30, 2016

*By E-Mail to* fernbrady@inklingspublishing.com
*and Certified Mail Return Receipt Requested*
*No.* 7009 2820 0003 2782 1746
Fernanda Brady
Inklings Publishing
7222 Granvia Drive
Houston, Texas 77083

Re:   Response to the letter and Termination Invoice for the Theta Comics contract

Dear Ms. Brady:

Our firm has been retained to protect and enforce the rights of Carl Titterington, Daniel Simpson, and JJ Titterington (collectively, "Authors") against you with respect to the Author – Publisher Agreement Theta Comic Series ("Contract") between you and the Authors.

Pursuant to your letter to the Authors dated May 23, 2016, you indicated your desire to terminate the Contract and enclosed a Termination Fee Invoice.

The Termination Clause in the Contract is clearly applicable only if the Authors request termination of the Contract. Specifically, it states:

Should Authors wish to terminate this contract, Authors agree to compensate Publisher as follows:

- Editor will invoice author at $35 per hour work done on the job up to the date Authors request termination;
- Publisher will invoice Authors any and all expenses incurred for the project up to the date Authors request termination including but not limited to cover artist charge, illustrator full charges, formatter charge, marketing materials charge, inventory expenses, marketing and promotion expenses, and any other such expenses incurred on behalf of the project; and

Fernanda Brady
June 30, 2016
Page 2

- o Authors will pay a termination fee of $1000 in addition to the above remuneration of expenses to Publisher as payment of the return of the rights to Authors ahead of the 10 year schedule.

The Authors have not, at any time, conveyed to you that they would like to terminate the Contract. Accordingly, they are not responsible for the fees contained in the Termination Fee Invoice.

Please send the formal release letter to the Authors within seven (7) days of the date of this letter. The Authors have already returned the original artwork back to you. You are prohibited from using the manuscripts in your possession.

If you have any questions, please feel free to contact me.

Sincerely,

*Jennifer Chang*

Jennifer Chang

*Cc:* Ramon Del Villar

*Cc:* Carl Titterington
Daniel Simpson
JJ Titterington

*Ramón M. del Villar*

*Attorney at Law*

P. O. Box 61097

Houston, Texas 77208

Tel. 281-840-7107

Fax. 832-230-8470

July 8, 2016

**CERTIFIED MAIL – RRR**
**7015-3010-0000-5989-1979**

Jennifer N. Chang, Esq.
Gregg & Valby, L.L.P.
1700 West Loop South, Suite 200
Houston, Texas 77027

    Re:    Theta Comics Contract

Dear Ms. Chang:

    My office represents Fernanda Brady d/b/a Inklings Publishing with respect to your letter dated June 30, 2016.

    Please be advised that my client strongly disagrees with your interpretation of the alleged termination of my client's contract with Messr. Carl Titterington, Daniel Simpson and J.J. Tintterington. Although my client was fully entitled to terminate the contract by treating the breaching party's repudiation as a complete breach [Pagosa Oil & Gas v. Marrs & Smith, 323 S.W.3d 203, 213 (Tex. App.—El Paso 2010, pet. denied)], my client was simply trying to be amicable after the wrongful and wanton conduct of your clients in deleting without authorization the works in question from my client's shared drive.

    In any case, my client is hereby unmistakeably withdrawing any offer of terminating the contract, which might have been made by Ms. Brady's correspondence, and will now seek to vigorously enforce their full contract rights.

    Under 17 USCS § 201, the copyrights to the Theta Comics series belong to Inklings Publishing as a work for hire. The copyright on the actual drawings belongs at inception to Ms. Rosa Maria Garza and to Inklings Publishing also as a work for hire. Your clients' wrongful deletion of the Theta Comics material in the Inklings Publishing drive constitutes a material breach of the contract by making performance by my client impossible. A material breach of a contract by one party excuses performance by the other party [Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196 (Tex. 2004); Man Industries Ltd. v. Midcontinent Exp., 407 S.W.3d 342, 358 (Tex. App.—Houston [14th Dist.] 2013, no pet. h.); Hewitt v. Biscaro, 353 S.W.3d 304, 311 (Tex. App.—Dallas 2011, no pet.); Henry v. Masson, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.)].

July 8, 2016
Jennifer N. Chang, Esq.
Page 2 of 2

Therefore, my client will now claim direct and consequential damages from your clients and will certainly consider other remedies afforded to them in light of the further wrongful acts evidenced by the testimony of Ms. Rosa Maria Garza, who acted as the illustrator for the comic book, in that on May 16, 2016, Messrs. Carl M. Titterington and Daniel Simpson called Ms. Garza attempting to convince her to join them in self-publishing the work under contract with Inklings Publishing. This was done at a time when Messrs. Carl M. Titterington and Daniel Sampson were purportedly finalizing the details for the publication of the work with Inklings Publishing as demonstrated by the various emails exchanged between them and my client, and by the phone conference held that same night.

The evidence will further show your clients' material breach by presenting evidence showing that on Saturday, May 21, 2016 at 3:06 PM my client expressed she fully intended to continue working with your clients and would proceed to format the book, using the panels your clients had uploaded to the drive. Yet, on Saturday, May 21, 2016 at 3:15 PM, Mr. Carl M. Titterington without authorization from Inklings Publishing entered into the drive and deleted the work in progress.

Please advise your clients that Inklings Publishing intends to enforce its rights by the remedies enumerated in 17 USCS §§ 502, 503, 504 and 505, if they were to attempt to use the copyrighted material owned by Inklings Publishing.

Respectfully,

Ramón M. del Villar
Attorney at Law

Cc: Ms. Fernanda Brady
Inkilings Publishing



# GREGG VALBY
ATTORNEYS AT LAW

SCOTT R. VALBY, PC *+
KAREN H. MILLER
THOMAS G. OVERBECK
ING XIONG (BRAD) LUO#
───
ODED SEALY
MICHAEL A. HOHOS
JENNIFER N. CHANG
NICHOLAS A. BAILEY
TRAVIS G. BEERWINKLE

GREGORY L. GREGG, RETIRED

*BOARD CERTIFIED IN
RESIDENTIAL REAL
ESTATE LAW BY THE
TEXAS BOARD OF LEGAL
SPECIALIZATION
+MEMBER, COLLEGE OF
THE STATE BAR OF TEXAS
#LICENSED IN NEW YORK

July 25, 2016

*By E-Mail to* ramondelvillar@msn.com
Ramon M. del Villar
P.O. Box 61097
Houston, Texas 77208

Re: Theta Comics Contract ("Contract")

Dear Mr. del Villar:

I have received your letter dated July 8, 2016. Your client cannot legally retract her termination of the Contract for the reasons set forth below.

Carl Titterington, Daniel Simpson, and JJ Titterington (collectively, "Authors") did not repudiate the Contract. "Repudiation or anticipatory breach is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance." *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). The digital files that Carl Titterington removed from the shared drive constitute the work product of the Authors' friend who edited the panels after Rosa Maria Garza failed to meet her obligations. Therefore, the files were not owned by your client, and the removal of these files did not constitute a breach of the Contract. Further, your client was not harmed by this removal because the Authors returned the original artwork to you.

Your client repudiated the Contract by sending the termination letter and Termination Fee Invoice to the Authors on May 23, 2016. The letter was a positive and unconditional refusal to perform the Contract. *Wisch*, 23 S.W.3d at 516. Specifically, the letter states:

> I hereby notify you that the whole team of Theta comics has been removed from the Author & Illustrator panel that I will be moderating at Comicpalooza in June. Needless to say, you are unwelcome at the Inklings table and no space there will be provided for you.

Ramon M. del Villar
July 25, 2016
Page 2

The Authors accepted the repudiation by returning the original artwork to your client pursuant to the termination letter and by requesting a formal release letter in the letter that I sent to your client on June 30, 2016. Further, the Authors materially changed their position in reliance on your client's repudiation by not participating at Comicpalooza in June. Accordingly, your client cannot retract her termination of the Contract on May 23, 2016. *See Griffith v. Porter*, 817 S.W.2d 131, 135 (Tex. App.—Tyler 1991, no writ) (As long as the non-repudiating party has not materially changed his position in reliance upon an earlier notice of default, a prior repudiation may be retracted by notification of the non-repudiating party that there will be performance."); *see also Lehigh, Inc. v. Xerox Bus. Servs.*, No. 05-95-00026-CV, 1996 WL 144164, at *4 (Tex. App.—Dallas Mar. 28, 1996, no writ); *Helsley v. Anderson*, 519 S.W.2d 130, 133 (Tex. Civ. App.—Dallas 1975, no writ).

Because your client repudiated the Contract, the Authors were entitled to elect to terminate the Contract and be excused from performance of any executory obligation, which they did. *See, e.g., Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 680 (Tex. App.—Austin 1998, pet. denied). Please send the formal release letter to the Authors within seven (7) days of the date of this letter.

If you have any questions, please feel free to contact me.

Sincerely,

Jennifer Chang

Cc: Carl Titterington
Daniel Simpson
JJ Titterington